IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LIVE FACE ON WEB, LLC, <br><br> v. <br><br> ZEOBIT, LLC, and KROMTECH ALLIANCE CORP., AND KROMTECH OF USA, LLC, and CLOUDMCCLOUD CORP. | CIVIL ACTION <br><br> NO. 17-1255 |

**MEMORANDUM RE: DEFENDANT KROMTECH OF USA'S MOTION TO VACATE ENTRY OF DEFAULT JUDGMENT**

Baylson, J.                                                                                                          October 3, 2017

    **I.**     **Introduction**

On March 21, 2017, Plaintiff Live Face on Web, LLC ("Plaintiff") filed this action against ZeoBIT, LLC ("ZeoBIT"), Kromtech Alliance Corp. ("Kromtech Alliance"), Kromtech of USA, LLC ("Kromtech USA"), and CloudMcCloud Corp. ("CloudMcCloud," and, together with the other defendants, the "entity Defendants") alleging one count of direct copyright infringement against the entity Defendants, one count of vicarious copyright infringement against the entity Defendants, one count of inducing copyright infringement against the entity Defendants, and one count of breach of contract against ZeoBIT. (See ECF 1). On April 25, 2017, Plaintiff requested default be entered against Kromtech USA for "fail[ing] to answer or otherwise plead in response to the complaint within the time allowed . . . ." (ECF 7). Default was entered on April 25, 2017.

Before the Court is Kromtech USA's motion to set aside entry of default, dated August 11, 2017 (ECF 9, Defendant Kromtech USA's Motion to Set Aside Entry of Default, "Def.'s Mot."), to which Plaintiff filed an Opposition on August 25, 2017 (ECF 17, Plaintiff's Response

1

to Defendant Kromtech USA's Motion to Set Aside Entry of Default, "Pl.'s Opp'n"), and Kromtech USA filed a Reply on September 1, 2017 (ECF 18, "Def.'s Reply"). Then, after the filing of Kromtech USA's Reply, Plaintiff filed an amended complaint on September 5, 2017. (ECF 19, First Amended Complaint, "FAC"). In the FAC, Plaintiff adds additional defendants and additional claims.

The additional defendants are Viacheslav Kolomeichuk ("Kolomeichuk") and Sergii Sosniak ("Sosniak," and together with the entity Defendants, "Defendants"). (See FAC at 1). Plaintiff alleges on information and belief that Kolomeichuk and Sosniak "owned, controlled and/or operated" the entity Defendants during all relevant time periods. (FAC ¶¶ 8–9). Thus, the FAC adds them as defendants to the first three counts, i.e., direct copyright infringement, vicarious copyright infringement, and inducing copyright infringement. The fourth claim—against ZeoBIT for breach of contract—remains identical to the original Complaint.

Plaintiff makes two additional claims in the FAC that were not among the four counts alleged in the Complaint. Plaintiff allege a fifth count against ZeoBIT and Kolomeichuk for violation of California's Limited Liability Company Law, and a sixth count against "[a]ll [d]efendants [e]xcept Kromtech USA" for violation of the California Uniform Fraudulent Transfer Act. (Id., at 28).

For the reasons explained below, Defendant Kromtech USA's motion to set aside entry of default will be GRANTED.

II.     **Factual Background and Procedural History**

Plaintiff alleges that it owns a series of "live person" software technologies that companies can license to display a customizable online "personal host" on their websites. (FAC

2

¶¶ 13-15). Plaintiff licenses these technologies to its customers in a "package" for a fee. (Id. ¶ 16). The software packages consist of three parts:

    (1) a "video presentation . . . protectable under, *inter alia*, U.S. copyright laws";

    (2) the software, "which is also . . . duly registered with the U.S. Copyright Office"; and

    (3) the "video player, which is also . . . duly registered with the U.S. Copyright Office." (Id. ¶ 17).

Plaintiff alleges that between 2011 and 2013, it licensed to ZeoBIT a total of four customized versions of its software packages. Plaintiff alleges that the Defendants marketed and then sold Plaintiff's software in an unlawful manner, including through deceptive marketing tactics. (Id. ¶ 30). After Defendants received bad publicity for engaging in such tactics, Plaintiff allege upon information and belief that Kolomeichuk, Sosniak, and ZeoBIT engaged in a scheme to conceal their continued control of, and involvement with, the software associated with deceptive marketing tactics. (Id. ¶¶ 31–33). This scheme allegedly "caused the Defendants to comingle the assets, property and operations of ZeoBIT and the other Defendants . . . ." (Id. ¶ 40). As a result of Defendants' allegedly deceptive marketing practices, ZeoBIT was sued in class actions for "unlawful trade practices of the Defendants' software, even though the misconduct was perpetrated collectively by the Defendants." (Id. ¶ 43). Because ZeoBIT settled claims with the class—while under the alleged control of Defendants—Plaintiff alleges that "Defendants caused the court and others to settle claims against the wrong parties." (Id. ¶ 45).

Plaintiff alleges its licenses to ZeoBIT required ZeoBIT to agree to the terms of Plaintiff's End User License Agreement ("EULA"). (Id. ¶¶ 22–24). The EULAs require, among other things, that:

    (1) Plaintiff's software "could only be used on one [] web page of one [] web site on the hard drive of one [] web server;

(2) The software is restricted to usage in the "country where the licensee resides," such that Defendants' installation and use of the software must be limited to the United States;

(3) Plaintiff's software cannot be "assign[ed], sublicense[d] or transfer[red] . . . to any person or entity . . . without the express written consent of [Plaintiff]";

(4) A licensee of Plaintiff's software "will indemnify and hold harmless [Plaintiff] from and against any and all liabilities . . . arising out of . . . such licensee's use and misuse of the [software] . . ."; and

(5) A licensee of Plaintiff's software will have "all rights of such licensee in the [software] . . . immediately revoked [if] such licensee such fail to comply with any provision of the EULA."

(Id. ¶¶ 52–57). Plaintiff alleges that Defendants disregarded these contractual and other legal rights by:

(1) "unlawfully sort[ing] all or some of the [software] on web farms, which necessarily stored the [software] on hard drives of multiple web servers";

(2) "attempting to transfer its rights to the [software] . . . without obtaining the necessary consent or authorization from [Plaintiff];

(3) "[d]espite failing to legally transfer its rights to the [software], ZeobIT did, in fact, supply the [software] to Kromtech Alliance and/or Kromtech USA and/or CloudMcCloud"; and

(4) "misus[ing] some or all of the [Plaintiff's software] to unlawfully market, advertise and sell [Defendant's software] in violation of applicable law."

(Id. ¶¶ 58–61).

Plaintiff also alleges that Defendants' third-party copyright infringement justifies the "piercing of the corporate/LLC/entity veils of all the entity Defendants" because the entity Defendants are "mere alter-egos and served no purpose other than being used as instrumentalities to perpetuate a fraud, i.e. the transfer of [Plaintiff's software] to Kromtech Alliance and/or Kromtech USA in order to avoid valid claims . . . arising from the[ir] unlawful conduct . . . ." (Id. ¶¶ 62, 80). As a result, Plaintiff seeks "joint and several compensation against the

Defendants and to enjoin Defendants from further infringing on [Plaintiff's] intellectual property and other rights." (Id. ¶ 73).

### III. The Parties' Contentions

Defendant Kromtech USA's Motion to Set Aside Entry of Default asserts that good cause exists to set aside default pursuant to Rule 55 of the Federal Rules of Civil Procedure because:

(1) Plaintiff will not be prejudiced by lifting of the entry of default;

(2) Kromtech USA has meritorious defenses to Plaintiff's claims; and

(3) Kromtech USA's failure to respond to the Complaint was the result of Plaintiff's failure to effect service upon Kromtech USA, not culpable conduct of Kromtech USA.

(Def's Mot. at 1).

Plaintiff's Response in Opposition to Defendant's Motion to Set Aside Entry of Default contends that no good cause exists to set aside the default because:

(1) Plaintiff will be prejudiced by lifting of the entry of default;

(2) Kromtech USA has no meritorious defenses to Plaintiff's claims; and

(3) Defendant was properly served with process and "simply refused to respond to the Complaint . . . ."

(ECF 17, "Pl's Resp." at 1).

Defendant Kromtech USA's Reply in Support of Motion to Set Aside Entry of Default contends:

(1) "Plaintiff asserts that it will be 'severely prejudiced' if the default is set aside, but offers no facts to support this conclusion . . .";

(2) "Plaintiff argues that Kromtech USA has no defenses to its copyright infringement claims, but ignores the fact that the Complaint fails to allege that Kromtech USA owns, operates, or controls the websites that allegedly infringed Plaintiff's copyrights. Kromtech uSA does not own, operate, or control those websites and has facially meritorious defenses to Plaintiff's copyright claims"; and

5

> (3) "Plaintiff can point to no evidence of culpable conduct by Kromtech USA that led to the entry of default."

(ECF 18, "Def's Reply" at 1).

### IV. Legal Standard

Rule 55(c) provides that "for good cause shown the court may set aside an entry of default and, if a judgment has been entered, may likewise set it aside in accordance with Rule 60(b)." Fed. R. Civ. P. 55(c). Rule 60(b) states, in pertinent part: "on motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect . . . ." Fed. R. Civ. P. 60(b)(1).

The Court has broad discretion in deciding whether to set aside a default judgment. Momah, M.D. v. Albert Einstein Med. Ctr., 161 F.R.D. 304, 307 (E.D. Pa. 1995). In general, defaults are not favored because the interests of justice are best served by reaching a decision on the merits. Id. The Third Circuit has explicitly stated it "does not favor default judgments and in a close case, doubts should be resolved in favor of setting aside the default and reaching the merits." Zawadski de Bueno v. Bueno Castro, 822 F.2d 416, 420 (3d Cir. 1987). Thus, motions to set aside default judgments are construed in favor of the movant. Brokerage Concepts, Inc., v. Nelson Med. Group, 99-cv-5214, 2000 WL 283849, at *1 (E.D. Pa. Mar. 15, 2000).

When deciding whether to vacate a default judgment, courts take into consideration four factors associated with Fed. R. Civ. P. 55(c): (1) whether lifting the default would prejudice the plaintiff; (2) whether the defendant has a prima facie meritorious defense; (3) whether the defaulting defendant's conduct is excusable or culpable; and (4) the effectiveness of alternative sanctions. Emcasco Ins. Co v. Sambrick, 834 F.2d 71, 73 (3d Cir. 1987).

While all four factors must be considered, "the threshold consideration is whether the defendant has alleged facts which would constitute a meritorious defense." NuMed Rehabilitation, Inc. v. TNS Nursing Homes of Pennsylvania, Inc., 187 F.R.D. 222, 224 (E.D. Pa.1999) (citing Resolution Trust Corp. v. Forest Grove, Inc., 33 F.3d 284, 288 (3d Cir. 1994)). Here, Defendant has met this threshold by providing a meritorious defense, and the remaining three factors also weigh in favor of granting its motion to vacate.

V.  Discussion

   A. Kromtech USA Has a Prima Facie Meritorious Defense

"The showing of a meritorious defense is accomplished when allegations of defendant's answer, if established at trial, would constitute a complete defense to the action." United States v. $55,518.05 in U.S. Currency, 728 F.2d 192, 195 (3d Cir. 1984); see Insurance Co. of America v. Packaging Coordinators, Inc., 2000 WL 1586081, at *1 (E.D. Pa. Oct. 24, 2000) (to assess whether the defendant has alleged facts which could constitute a meritorious defense, "the court may examine the defendant's answer, or if none was filed, the allegations in its motion to vacate the default judgment or set aside entry of default."). A defendant need not prove that it will win at trial. Emcasco Ins. Co. v. Sambrick, 834 F.2d 71, 74 (3d Cir. 1987). Rather, it is sufficient for a defendant to show that its defense is not "facially unmeritorious." Id. (quoting Gross v. Stereo Component Systems, Inc., 700 F.2d 120, 123 (3d Cir. 1983)). It is not enough, however, for a defendant to allege only "simple denials or conclusory statements." $55,510.05 in U.S. Currency, 728 F.2d at 195.

The Court finds that Defendant Kromtech USA has proffered a meritorious defense by asserting in its Response that it "never even possessed Plaintiff's Technology, let alone used or misused it, and never promoted infringement of Plaintiff's Technology by third parties." (Def.'s

Mot. 8). Kromtech USA also asserts that it "has no right or ability to supervise any of the alleged acts of infringement [which is required for a claim of vicarious copyright infringement,] as it does not operate any of the URLs Plaintiff alleges contain [Plaintiff's] Technology." (Def.'s Mot. at 10). These defenses, if proven to be true at trial, would absolve Defendant of liability to Plaintiff. See Blue Ribbon Commodity Traders, Inc. v. Progresso Cash & Carry, 07-cv-4122, 2008 WL 2909360, at *2 (E.D. Pa. July 23, 2008) (finding "the evidence that [defendant] proffers is irrelevant to the question now before the court of whether [defendant's] claims, *if true*, would constitute a meritorious defense.") (emphasis in original).

Accordingly, this Court's inquiry into the merits of Defendant's defense is, at the time, complete, and this factor weighs in favor of vacating the default judgement and giving Defendant a chance to present its defense at trial.

### B. Kromtech USA's Conduct is Excusable and Not Culpable

The second factor to consider is whether Defendant's failure to defend against Plaintiff's action was due to "excusable neglect," as opposed to any culpable conduct.

"The standard for defendant's culpability in failing to answer . . . is whether it acted willfully or in bad faith." WPHL TV, Inc. v. Marketing Specialists, Inc., 88-cv-3079, 1988 WL 80041, at *1 (E.D. Pa., Aug. 1, 1988) (holding the defendant's "neglect in failing to appear or otherwise respond to the complaint and summons is excusable . . . [because] it was confused as to the validity of service.").

Here, there is no evidence to suggest that Defendant Kromtech USA acted willfully or in bad faith in its failure to respond to Plaintiff's Complaint.[1] The Court accepts David Nance's statement—contained in his declaration—that Maya Terrance, whom Plaintiff alleges was served

---

[1] The Court finds credible the declarations provided by David Nance and Matthew Brown. (See ECF 9-1., "Nance Decl."; ECF 9-2, "Brown Decl.").

with the Complaint, is not an agent or employee or Kromtech USA and has never been authorized to accept service of process on behalf of Kromtech USA. (See Nance Decl. ¶ 4). The Court also accepts Matthew Brown's statement that the delay in moving to vacate entry of default was due to an extended conversation with Plaintiff's counsel regarding whether Plaintiff would agree not to contest Kromtech USA's motion. (See Brown Decl. ¶¶ 3–5). Although Defense counsel's delay of more than three months from learning of the entry of default to filing a motion to set aside entry of default is not insignificant, the Court is satisfied that Kromtech USA was not culpable for at least most of that period, as they had informed Plaintiff's counsel of their intent to move to vacate the default and they spent at least two months of that period with the understanding that Plaintiff had not yet decided whether to agree not to contest the motion. (See id.).

In contrast, following the filing of Defendant's motion to set aside entry of default, Plaintiff has submitted no declarations in opposition. Instead, Plaintiff submitted as an exhibit to their Response an email chain that corroborates the email chain discussed in Mr. Brown's declaration. (Compare Pl's Resp. Ex. 2 with Brown Decl. ¶ 2). Plaintiff asserts that "Defendant actively ignored this action," but submits no competing evidence in any form disputing Mr. Brown's version of events, in which he repeatedly sought clarification from Plaintiff's counsel as to whether Plaintiff would agree not to contest Defendant's motion to set aside entry of default. (See Brown Decl. ¶¶ 3–5).

Accordingly, the Court is satisfied that Defendant's conduct in failing to respond to the June 27, 2016, service was non-culpable.

### C. Lifting the Default Would Not Prejudice Plaintiff

The third factor to consider is whether Plaintiff will suffer prejudice if the Court vacates the default judgment. A plaintiff suffers prejudice of this kind when "[the] 'plaintiff's claim would be materially impaired because of the loss of evidence, an increased potential for fraud or collusion, substantial reliance on the entry of default, or other substantial factors.'" Blue Ribbon Commodity Traders, Inc. v. Quality Foods Distributors, No. CIV.A. 07-4037, 2007 WL 4323001, at *2 (E.D. Pa. Dec. 11, 2007) (quoting Dizzley v. Friends Rehab. Program, 202 F.R.D. 146, 147-148 (E.D. Pa 2001)).

Here, Plaintiff argues it would suffer prejudice if the default were vacated but provides no evidence whatsoever that any prejudice would result. For example, Plaintiff states in a conclusory fashion in its Response that "[a]llowing Defendant to simply sit on its haunches for four months and then simply excuse its dilatory behavior would prove extremely prejudicial to [Plaintiff]." (Pl's Resp. 5).

Finally, Defendant filed its motion to set aside the entry of default three and a half months after the judgment was entered. Plaintiff fails to identify any risk of prejudice that is a result of this delay, and does not suggest that it relied on the entry of default. See Progresso, 2008 WL 2909360, at *3; see also, Dizzley, 202 F.R.D. at 147–8 (holding that a three-month delay caused no prejudice).[2]

In light of Plaintiff's inability to articulate even one reason they will suffer prejudice as a result of delay, this Court finds no prejudice.

---

[2] In fact, on September 5, 2017, Plaintiff filed an amended complaint against Kromtech USA and other Defendants, so the complaint on which Plaintiff sought an entry of default is no longer operative.

**VI.    Conclusion**

For the reasons stated above, Defendant's motion to vacate the default judgment will be GRANTED.

An appropriate Order follows.

O:\Garrett.2017\17-cv-1255, Live Face on Web v. Zeobit\Memo Re Def.'s Motion to Vacate Default Judgment.docx